UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X

UNITED STATES OF AMERICA

      -against-                    S4-08-Cr.-828  (VM)

MICHAEL FORDE,
JOHN GREANEY,
BRIAN HAYES,
MICHAEL BRENNAN,
FINBAR O'NEILL,
JOSEPH OLIVIERI,
BRIAN CARSON,
JOSEPH RUOCCO,
JOHN STAMBERGER, and
MICHAEL VIVENZIO,

                 Defendants.

------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISMISSAL AND OTHER RELEIF REGARDING COUNTS SEVENTEEN AND TWENTY-FOUR OF THE INDICTMENT

SULLIVAN GARDNER PC
475 Park Avenue So.
New York, New York 10016
(212) 687-5900
Attorneys for Joseph Olivieri

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**                                    1

**STATEMENT OF FACTS**                                        3

**ARGUMENT**

**POINT I**                                                   8
THE PERJURY CHARGE SHOULD BE DISMISSED
(COUNT TWENTY-FOUR)

**POINT II**                                                  28
THE PORTION OF COUNT SEVENTEEN CHARGING
CONDUCT PRIOR TO AUGUST 3, 2004 SHOULD BE
DISMISSED AND A BILL OF PARTICULARS
SHOULD BE GRANTED

**CONCLUSION**                                                37

Defendant Joseph Olivieri submits this memorandum of law in support of his motion for dismissal and partial dismissal of Count Seventeen and Count Twenty-four of the Indictment,[1] and for a bill of particulars as to Count Seventeen, along with such other relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

By this motion, Joseph Olivieri ("Olivieri") seeks dismissal of the perjury count, as well as partial dismissal of the count charging him with providing unlawful payments to labor representatives by way of meals and expenses.

The issue concerning the perjury count, as to the materiality of the charged false declarations, has the atypical component that the deposition in which the statements were provided was pursuant to a court order by Judge Haight. The court order allowed for the deposition, but specifically limited the scope of the examination to the one topic the court found material to that action, as it then existed. Judge Haight, in that order directly denied the Government's application to take a more broad deposition, including questions regarding organized crime connections or corrupt activities. The court found that it was beyond permissible discovery as not material to the

---

[1] As cited herein, "Indictment" refers to the most recent Superseding Indictment at the time of the filing of this motion.

action and the remedy issue still before the court. Yet, the perjury count is entirely based upon questions posed by the Government that were beyond the scope allowed, and actually prohibited by, Judge Haight. As such, pursuant to Judge Haight's order, these questions and answers were not material to that action. The perjury count, we respectfully submit, must be dismissed on this basis, and for the other reasons stated herein.

Additionally, for the grand jury to have made a determination of materiality, it must have been advised of, and instructed upon, Judge Haight's order. If the perjury count is not otherwise dismissed, Olivieri requests inspection of the relevant portions of the grand jury testimony and instructions, or alternatively for Court inspection.

The charge of unlawful payments to labor representatives is on its face substantially barred by the statute of limitations. As the Indictment was filed on August 3, 2009, the portion of the count that involves alleged conduct of before August 3, 2004 of purchasing meals or paying expenses should be dismissed from the indictment. Each claimed event is its own criminal act. As such, the statute of limitations bars prosecution of such acts that are more than five years old from the date of the indictment. Additionally, as to any portion of this count that is not dismissed, Olivieri should be provided with a bill of particulars regarding each charged event as

to where and when it occurred, who was provided with the meals or expenses, and the amount paid.

## STATEMENT OF FACTS

Olivieri is the Executive Director of a contractor's association, the Association of Wall, Ceiling and Carpentry Industries of New York, (WCCI), and serves as an employer representative trustee for the District Council Benefit Funds (the "Funds"). He is charged in four counts of a thirty-one count Indictment.[2] The charges against him are conspiracy to commit wire fraud and theft from an employee benefit plan; making unlawful payments to labor representatives, by way of meals and expenses; unlawfully accepting a loan with the intent to be influenced; and perjury, respectively Counts Three, Seventeen, Twenty-three, and Twenty-four. Olivieri's alleged conduct is claimed to have occurred between 2002 and 2007, depending on the charge.[3]

The perjury count in which Olivieri is charged arises out of his

---

[2] Very recently a superseding indictment was filed which did not impact the charges against Olivieri, except for a renumbering of the four counts in which he is charged. The superseding indictment is annexed as Exhibit A. All references to annexed exhibits are to exhibits annexed to the declaration of counsel Brian Gardner submitted in support of the present application.

[3] The indictment otherwise charges, against the co-defendants, inter alia, a racketeering conspiracy orchestrated by officers and members of the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners. The racketeering acts, and other charges, allege payments by contractors to defendants who were Union officers and members.

deposition testimony in the civil matter of:  <u>United States v. District Council</u>

<u>of New York City & Vicinity of the United Brotherhood of Carpenters &</u>

<u>Joiners of America</u>, 90 Civ. 5722 (CSH). At the time of his deposition, on

December 18, 2007 the matter had been in existence for seventeen years. At

that point the only portion of the action still before the court was the issue of

the remedy to occur as a result of a contempt finding against the District

Council for violation of the consent decree, not having to do with any

conduct by Olivieri.  WCCI, along with other trade associations sought to

intervene in the action and oppose certain contemplated remedies[4], and

Olivieri submitted a declaration in support of WCCI's application. The

Government then sought to take the depositions of those individuals

submitting declarations. The issue was litigated and the court allowed

limited discovery. Discovery was allowed only "into the state of the

Associations' awareness during CBA negotiations of the government's

motion to hold the District Council in contempt, and the economic effect of

remedy abolishing the Request System." Opinion and Order of Judge Haight

dated October 25, 2007 (the "Order")[5] p. 8. The Government then sought

leave to "conduct discovery into issues pertaining to whether Joseph Olivieri

---

[4] The contemplated remedies included changing the manner in which union members
were utilized or referred to various jobs, particularly the Government sought to abolish
the Request System.
[5] Judge Haight's opinion and order of October 25, 2007 is annexed as Exhibit B.

and other officers of the [WCCI] have connections to organized crime or otherwise have engaged in corrupt activities." Order p. 9.

Judge Haight, after performing an analysis of the scope and limits of discovery, the court's prior order, the status of the case, and what is material to the action as it then stood, denied the Government application. Order p. 12. However, the court allowed discovery on one issue, finding that issue potentially material to the remedy issue outstanding, and that the other discovery sought was not "reasonably calculated to lead to discovery of admissible evidence." Order p. 9.

The court found that: "the government will be entitled, if it deposes Olivieri, to inquire about Olivieri's knowledge, if any, of and contacts, if any, with Louis Moscatiello or other organized crime figures, with reference to that specific 'corruption of the job site' targeted by the government[6] and involving carpenters belonging to one of the District Council's constituent local unions. Such an inquiry may lead to the discovery of evidence that would be admissible at an evidentiary hearing or plenary bench trial on the

---

[6] The "corruption of the job site" targeted by the government regards the "Request System" that was at the heart of the issue before the court. The Government was arguing to abolish this system as it claimed it led to corruption of the job site, and the entities intervening largely did so to argue that the Request System did not lead to corruption on the job site. Moscatiello was mentioned by name in the Government's application as he had recently pled guilty to involvement in a contractor avoiding the District Council work rules, as well as alleged organized crime figure. Order p. 11; see also Order p. 8 (reference to the Request System and the Government briefing on this issue).

underlying issues in the case." Order p. 12.

The court also found that: "Except to that limited extent, the government's application to conduct discovery into whether Mr. Olivieri 'and other officers' of the Association 'have connections to organized crime or otherwise engaged in corrupt activities' is denied. The government has failed to show that such broad and open-ended inquiries are permissible under Rule 26". Order p. 12.

Pursuant to the Order, Olivieri's deposition was taken by the Government on December 18, 2007.[7] The alleged false statements contained in the perjury count were all regarding questioning that was beyond the scope allowed by the Order, and was specifically prohibited by it.

At the time of Olivieri's deposition he was the target of a criminal investigation by the Government. As early as January of 2007 the government had obtained pen register orders for his telephone, in the application describing that he was under investigation.[8] The questions and answers that comprise substantially all of the perjury count regard topics that are alleged as the overt acts against Olivieri in the conspiracy count of the

---

[7] Deposition annexed as Exhibit C, our review indicates the first question and answer regarding the perjury counts starts at page 167 of a deposition where questioning ends at page 236.
[8] Pen Register applications and orders annexed as Exhibit D.

indictment. Moreover, all of the alleged false statements of Olivieri during the deposition occurred during the last portion of it. It was a full day deposition, with questioning during the first part of the deposition falling within the scope permitted by the Order. Only once that portion of the questioning had occurred, did the Government engage in the second portion of the deposition where they delved into general questions concerning organized crime ties and corrupt acts, questions specifically prohibited by the Order, yet utilized as the basis for all of the claimed false statements in the perjury count.

The Indictment also charges Olivieri, in Count Seventeen, with making unlawful payments to labor representatives in violation of 29 U.S.C. § 186(a)(1), (d)(2). Olivieri is alleged to have paid for meals and expenses of District Council officers and representatives over the time period of 2002 to 2005. The Indictment fails to set forth the dates, locations, amounts, and parties of the alleged transactions.

# ARGUMENT

## POINT I

### THE PERJURY CHARGE SHOULD BE DISMISSED
### (COUNT TWENTY-FOUR)

In Count Twenty-four of the indictment Olivieri is charged with perjury regarding a deposition of him on December 18, 2007, granted by the court in the matter of <u>United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters & Joiners of America, et. al., 90 Civ. 5722</u> (CSH), (the "1990 Civil District Council Action"). The deposition was the product of motion practice in that matter by the Government seeking discovery. The deposition occurred pursuant to, and shortly after, the Order of Judge Haight, dated October 25, 2007, and was limited in scope by that Order. Judge Haight described, and found, that the requested discovery and depositions by the Government were beyond the permissible limits of discovery. However, the Government was permitted to take the deposition of Olivieri as limited in scope by the Order. Each of the alleged false statements in the perjury count is as to matters specifically prohibited by Judge Haight as not material to the 1990 District Council Action.

In Count Twenty-four Olivieri is charged in ten sections with making false statements, as well as other statements not disclosed or described. The

8

count should be dismissed or partially dismissed due to: a lack of materiality; the fundamentally ambiguous nature of the questions; and the literal truth of the statements as apparent from the transcript:

1.     Each of the claimed false statements comprising this charge were regarding questioning Judge Haight had previously determined was not material to the litigation.[9]

2.     The questions posed were so vague, as to be fundamentally ambiguous, so that the answers cannot support a perjury conviction as a matter of law pursuant to Bronston v. United States, 409 U.S. 352 (1973) and United States v. Lighte, 782 F. 2d 367 (2d Cir. 1986).

3.     The statements by Olivieri, relied upon by the Government for this perjury count, or at a minimum sixteen of the twenty-five charged declarations, were literally accurate on the face of the indictment, regardless of any allegation of an intention to mislead or divert, so that as to those answers the indictment must be dismissed.   Bronston v. United States, 409 U.S. 352 (1973).

---

[9] Additionally, there is no description in the indictment as to the nature and status of the 1990 Civil District Council Action nor the only subject determined as material by Judge Haight upon which the deposition could be taken, so that unless the grand jury was provided evidence and instructions regarding the Order, they could not have made an appropriate determination as to materiality. Further, there is no indication in the indictment as to which matter it is claimed that the false declarations were material to, i.e., this proceeding or the 1990 Civil District Council Action, further, and the alleged falsehoods on their face were not material.

9

4.      The perjury count, to the extent no otherwise dismissed, should be limited to the non-dismissed declarations specified in the count.

<u>Materiality</u>

Olivieri is indicted for perjury under 18 U.S.C. § 1623(a), which provides "[w]hoever under oath … in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration…" shall be subject to the stated criminal penalties.  As such, § 1623(a) "is contravened only when the perjury is committed in response to a question which bears upon the matters within the investigations' purview." <u>United States v. Berardi</u>, 629 F. 2d 723, 727 (2d Cir. 1980).  It must be "material to the proceeding in which it is given". <u>United States v. Zagari</u>, 111 F. 3d 307, 329 (2d Cir. 2008).  As opposed to the wide-ranging function of the grand jury, where "the materiality of its inquiries must be broadly construed", other proceedings have objectives that are more limited and precisely defined. <u>Berardi</u>, 629 F. 2d at 727.  "The materiality of statements made in a grand jury investigation may more readily appear than that of similar evidence offered on an issue in a civil or criminal litigation", where the purpose is to "prove matters directly at issue". <u>United States v. Stone</u>, 429 F. 2d 138 (2d Cir. 1970).  Whether the statement is material, then, depends on what type of proceeding is occurring as well as

the subject matter of it. <u>See</u> <u>id.</u>[10] For a false statement given at deposition to be material to a civil proceeding it has to be "reasonably calculated to lead to the discovery of evidence admissible at the trial of the underlying suit". <u>United States v. Kross</u>, 14 F.3d 751 (2d Cir. 1994).  Materiality is a threshold issue which should be determined by the Court, either by pre-trial motion if practicable or prior to submission of the case to the jury. <u>See</u> <u>id</u>. at 728.

Additionally, in <u>United States v. Slawik</u>, 548 F. 2d 75, 83 (3d Cir. 1977), the court held that "a conviction under 18 U.S.C. § 1623 may not stand where the indictment fails to set forth the precise falsehood alleged and the factual basis for its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods." The indictment must indicate in some manner why and how the area of inquiry is material. <u>Id</u>. at 79, 83; <u>see also</u> <u>United States v. Regan</u>, 897 F. Supp 748 (S.D.N.Y. 1995).[11]

---

[10] The test for materiality in a grand jury proceeding is "if the question posed is such that a truthful answer could help the inquiry, or a false response hinder it, and these effects are weighed in terms of potentiality rather than probability." <u>Berardi</u>, 629 F. 2d at 728. The cumulative nature or even the collateral nature of the inquiry to the principal objective of the grand jury is of no consequence. <u>Id</u>.

[11] In <u>Regan</u>, the court was presented with this argument, and rejected it as a factual matter in that the indictment in <u>Regan</u> "gave sufficient notice of what the grand jury was investigating." <u>Id</u>. at 755. In <u>Regan</u>, the indictment contained a clear statement as to what was being investigated. In <u>Regan</u> the court also stated that indictment tracked the statutory language and contained sufficient detail.

Here, the Court is presented with an atypical situation as regards a motion to dismiss a perjury count, in that the deposition that forms the basis of the count was limited in scope on the basis of materiality by judicial order. The court in the relevant proceeding, by way of an opinion and order dated October 25, 2007, had determined what areas of inquiry were material and what were not. In 2007, when the Order and deposition occurred, the 1990 District Council Action had been in existence for seventeen years.

The status of the action is relevant in that Judge Haight, in determining what discovery could occur, made findings as to what was material to the action as it stood. The matter pending before Judge Haight at this time was "the question of an appropriate remedy for the District Council's contempt of the Consent Decree…" Order p. 1. Previously, Judge Haight, in an August 14, 2007 order, in response to a Government application, held that "in advance of a plenary hearing or bench trial on the remedy issue, the government is entitled to pretrial discovery relating to that issue, particularly with respect to affidavits and declarations submitted by officers of the Intervenors in support of their successful motions to intervene or directly addressing the remedy issue." Order p. 2.  The August 14, 2007 order permitted discovery "into the state of the Associations' awareness during CBA negotiations of the government's motion to hold the District

Council in contempt, and the economic effect of remedy abolishing the Request System." Olivieri was an officer of the Association which sought to intervene.[12] However, the August 14, 2007 order denied the Government's request for open ended discovery, and limited it to these specific areas. It specifically denied the request to obtain discovery regarding efforts to combat union corruption. Order p. 8. The October 25, 2007 order was a result of the Government attempting to expand the area of discovery by seeking "permission to conduct discovery into issues pertaining to whether Joseph Olivieri and other officers of the Association of Wall-Ceiling and Carpentry Industries ('WCC') have connections to organized crime or otherwise have engaged in corrupt activities." Order p. 2.

Judge Haight, in the Order, discussed Rule 26 and the scope and limits of discovery as extending to any matter relevant to "the issue at stake in the litigation". Order pp. 2-3. Judge Haight describes the issues then relevant. He discusses the Government's application, which he states is seeking leave "to conduct discovery into issues pertaining to whether Joseph Olivieri and other officers of the [WCCI] have connections to organized crime or otherwise have engaged in corrupt activities." Order p. 9. The court

---

[12] Olivieri's deposition was taken only after he submitted an affidavit in support of the Association's application to intervene in 1990 District Council Action. Neither Olivieri, nor the Association, was a party to that action, and his deposition was limited in scope as it related to that action.

discusses the basis for the Government's request and particularly a guilty plea by Louis Moscatiello as relevant to that request.

Judge Haight then found: "*the government will be entitled, if it deposes Olivieri, to inquire about Olivieri's knowledge, if any, of and contacts, if any, with Louis Moscatiello or other organized crime figures, with reference to that specific 'corruption of the job site' targeted by the government and involving carpenters belonging to one of the District Council's constituent local unions. Such an inquiry may lead to the discovery of evidence that would be admissible at an evidentiary hearing or plenary bench trial on the underlying issues in the case.*"[13] Order p. 12 (emphasis added).

Judge Haight, however, in the very next paragraph states: "*Except to that limited extent, the government's application to conduct discovery into whether Mr. Olivieri 'and other officers' of the Association 'have connections to organized crime or otherwise engaged in corrupt activities' is denied. The government has failed to show that such broad and open-ended inquiries are permissible under Rule 26*". Order. P. 12 (emphasis added).

Therefore, discovery was allowed with "reference to that specific

---

[13] That is, up to the very limits of the materiality standard described in <u>Kross</u>, 14 F.3d 751.

'corruption of the job site' targeted by the government." Previously in the order, and motion by the government, the court described that the Government's argument is that the Request System, a manner by which union members would be assigned work, leads to "corruption of the job site" and should be eliminated. Order p. 3-4.

Accordingly, the issue of what Olivieri could be questioned concerning was thoroughly litigated before Judge Haight. Judge Haight determined the scope of the deposition, finding that matters beyond that scope were not material to the litigation.[14] See United States v. Kross, 14 F.3d 751 (2d Cir. 1994).  Each of the claimed false statements upon which the Government bases the perjury count is squarely within the discovery that was specifically denied to the Government.

Olivieri's deposition was an entire day deposition, and was taken by the Assistant United States Attorney who was before the court regarding the Order. Olivieri's deposition reads as almost two separate portions. The first part of the deposition regards, *inter alia*, matters within the scope of the Order, and does not involve any alleged perjury. However, after the

---

[14] Fed.R.Civ.Proc. 26 describes the scope of discovery in a civil matter. Kross, 14 F.3d 751, arguably took materiality of deposition questions up to the limits of the scope of such discovery, that is to matters "reasonably calculated to lead to the discovery of evidence admissible at the trial of the underlying suit." Judge Haight's finding that certain matters are outside of the scope of discovery, is even by the most broad reading of materiality a finding that they are not material.

Government had concluded the questioning on those matters, they delved into questioning on issues beyond the permissible scope, and as specifically prohibited, by the Order.[15] For example, in addition to the questions that form the basis of the perjury count, the Government ends the deposition by asking Olivieri if he knows certain people and if he has any knowledge if those people have any connection to organized crime. Exhibit C pp. 234-235. Unquestionably the Government asked questions that were outside the scope of the discovery allowed by Judge Haight, and actually specifically prohibited by him as not material.

As such, the Government's attempt to utilize the answers to such questions in the instant indictment is wholly improper and unsupportable. As already determined by Judge Haight the questions and answers on such subjects were not material. Moreover, unless the grand jury received evidence regarding, and were instructed on, the ruling of Judge Haight as to what matters were material to the proceeding and the stage of the proceeding, then the grand jurors could not have made a determination that the alleged false statements were material declarations to that action. It is requested that if the count is not otherwise dismissed, that counsel for Olivieri be provided with the grand jury minutes relevant to this issue, or

---

[15] Again, it appears that no alleged perjury occurred until page 167 of the 236 page deposition. Exhibit C.

alternatively that the Court review the minutes for this concern and determine if the grand jury was provided with the evidence and correct instruction.

A review of the questions and answers contained in the indictment evidences, in a striking manner, that the questions were in violation of Judge Haight's ruling and were as such not material, and cannot serve as the basis for the perjury count:

A.      The portions of the count labeled (i), (ii), (iii) and (iv) all deal with questions and answers solely regarding Louis Moscatiello, Sr., without any relation to "corruption of the job site targeted by the government [that is, the Request System] and involving carpenters belonging to one of the District Council's constituent local unions".   The Government explains in fn. 1 to the perjury count that Moscatiello is a "Soldier and Acting Capo in the Genovese Organized Crime Family who has pleaded guilty...to racketeering charges relating to union fraud, amongst other things."[16] The alleged perjury statements, by Olivieri, as to Moscatiello are (i) "I never met with him"; (ii) "No, I never made arrangements to see him...I don't recollect ever making a meeting with him"; (iii) as to what they would discuss if Olivieri saw Moscatiello, "How's the family?" "What's new?", and in

---

[16] Although the grand jury may have found this interesting, and perhaps somewhat prejudicial, it is not properly in the indictment.

response to if "you ever discuss any kind of business with him?, Olivieri responded: "Not to my knowledge or recollection"; (iv) the Government asked if Olivieri had "any conversations with Louis Moscatiello about anything to do with the construction industry at all?" To which Olivieri answered "Not to my recollection".

These questions did not ask whatsoever about carpenters belonging to a local union nor the government's issue as to corruption of the job site by the Request System. The Government was not free to ask any questions generally concerning Olivieri's contact with Moscatiello, (or others), but was limited to ask questions as to that contact "with reference to that specific 'corruption of the job site' targeted by the government and involving carpenters belonging to one of the District Council's constituent local unions". The Government wholly ignores this restriction and asks questions regarding Olivieri's general contact with Moscatiello, what they would discuss when they saw each other, and go so far as to ask if they discussed "anything to do with the construction industry at all." These questions and answers were specifically only about Olivieri's "connections to" an organized crime figure. The questions and answers and fn. 1 make this unquestionably clear.  It was a blatant violation of Judge Haight's ruling as to the scope of discovery and specific limitation on discovery, that the

Government was prohibited from asking about if Olivieri had "connections to organized crime or otherwise engaged in corrupt activities", as such these portions of the indictment must be dismissed.

B.      Likewise, the next portions of the indictment (v), (vi), (vii), and (viii) all only concern questions of Olivieri's relationship and contact with CC-1, (Murray). At the outset, unless the Government presented evidence to the Grand Jury that Murray was an "organized crime figure" the questions were beyond what was permissible pursuant to the Order. The deposition of Olivieri was limited to "Moscatiello or other organized crime figures, with reference to...." The indictment does not, anywhere, allege that Murray was an organized crime figure.  Again, if the count is not otherwise dismissed, we request that the Court provide the relevant testimony and instructions to counsel, or alternatively undertake a court review.

Moreover, all of the questions in these sections involved: (v) what is Olivieri's relationship with Murray; if they had spoken during a particular period of time; did they "discuss business"; did they ever "arrange to meet"; (vi) how many times they spoke during a given period of time; (vii) if Olivieri spoke with him "outside of an Association event"; if he ever "did business with Murray"; (viii) did "Murray own any other companies"; and lastly if a company owned by Olivieri "ever worked on the same job site as

On Par" [Murray's company].  Again, these questions did not ask about carpenters belonging to a local union nor the government's issue as to corruption of the job site by the Request System. The questions were not with "reference to that specific 'corruption of the job site' targeted by the government and involving carpenters belonging to one of the District Council's constituent local unions".  Choosing any of the questions as an example, exemplifies that the questions were not proper or material, how many times they spoke, or if they ever did any type of business together is unequivocally outside of the questioning allowed as material.

These questions were clearly and attempt to delve into the prohibited area of general "corrupt activities". Order p. 12.  Olivieri was a target of the Government at the time of his deposition.  He was a target with regard to his contacts with Murray, and the questions at the deposition specifically involve the alleged overt acts charged against Olivieri in the conspiracy count.  The Government was clearly fishing to bolster its potential case against Murray for corrupt acts. This is precisely what Judge Haight prohibited. Order p. 12.  These questions were unquestionably in contravention of the court's order, and as such not material to the action.

C.     The next set of questions under section (ix) is actually entitled "[Concerning how Olivieri's company, DNO, obtained work on a jobsite at

3536 Cambridge Avenue, Bronx, New York]", displaying by the heading alone the immateriality of the question. The government then goes on to question Olivieri concerning how he found out about the job, and if he was aware that Murray or a company associated with him did work at the site. The site as alleged in Count Three of the indictment, the conspiracy charge, was a non-union construction project not involving District Council carpenters. The alleged false declarations all involve Olivieri stating he "cannot recall his name right now" as to the person he spoke with who was doing the project, nor recall the name of the person who told him about the project.  Again, these questions were not regarding Olivieri's knowledge of Moscatiello or other organized crime figures  with "reference to that specific 'corruption of the job site' targeted by the government and involving carpenters belonging to one of the District Council's constituent local unions". Order p. 12.  Although the Government may claim this questioning is relevant to their allegations against Olivieri in the conspiracy count, it was far afield from what was permitted as material discovery and questioning pursuant to the Order, and as such cannot support a perjury charge.

Lastly, in section (x) the Government asked questions regarding, Murray's company, On Par's connection with a different contractor; if the other contractor ever "hired workers who had previously worked for On

Par"; or if he or anyone else at the Association "did arrange or facilitate in any way the transfer of either business or workers for On Par to contractor 7". Again, although the Government may claim this questioning is relevant to their allegations against Olivieri in the conspiracy count, it was far outside of what was permitted discovery and questioning pursuant to the Order. The Order specifically prohibited a fishing expedition as to "corrupt activities" and limited the questioning to specific people or type of people and a particular subject, that is, Moscatiello or other organized crime figures with "reference to that specific 'corruption of the job site' targeted by the government and involving carpenters belonging to one of the District Council's constituent local unions". Order p. 12.  This questioning, as such was improper and immaterial.

The questioning in sections (v) through (x) is directly regarding the allegations in the indictment of Olivieri's overt acts in the conspiracy count, Count Three. At the time of this deposition on December 18, 2007 Olivieri was under investigation. As early as January of 2007 the Government applied for and received a pen register on his phone.[17] Contrary to Judge Haight's order, it appears evident that the Government utilized his deposition as an opportunity to question him on matters relevant to their

---

[17] Applications and orders annexed as Exhibit D

investigation, but prohibited by the Order as immaterial to the 1990 District Council Action.

Accordingly, each and every one of the questions contained in the perjury count regarded matters that Judge Haight had determined were not material to the action. Rather, the questions were solely focused on whether Olivieri had connections to organized crime and whether he was engaged in other activities the Government could claim were corrupt.[18] It is no coincidence that the exact same issue he was questioned about at the deposition in the civil proceeding, forms the basis of the overt acts alleged against him in the indictment.[19] The questions and answers that make up the perjury count were not material to the 1990 District Council Action on their face, and pursuant to an order of Judge Haight which prohibited this discovery. Further, for the grand jury to properly have found that these questions and answers were material to the 1990 District Council Action, there must have been evidence regarding that action and the Order presented to them, as well as an appropriate instruction. If the count is not otherwise dismissed, then we request that defense counsel be provided with the relevant portions of the grand jury testimony and instructions, or

---

[18] Notably, Judge Haight, in directing only the limited discovery stated that the court "is not saying" that "Mr. Olivieri is or has been anything other than an honorable and law-abiding citizen". Order p. 12.
[19] In addition to the allegation that he took a loan in violation of the law.

alternatively that the Court perform this review. It was poor judgment for the Government to ask these questions after Judge Haight ruled otherwise, it is even poorer judgment for the Government to then include these questions and answers as the basis for the perjury count of the indictment.[20]

Fundamentally Ambiguous

In addition to the lack of materiality, the questions were too fundamentally ambiguous to support a perjury charge. "When a line of questioning is so vague as to be fundamentally ambiguous, the answer associated with the questions posed may be insufficient as a mater of law to support a perjury conviction. Unites States v. Lighte, 782 F. 2d 367, 375 (2d Cir. 1986); see also Bronston v. United States, 409 U.S. 352 (1973). As the Bronston court explained, "precise questioning is imperative as a predicate for the offense of perjury", the questioner "has the burden to pin the witness down to the specific object of the inquiry" Id at 360, 362.   For example, in section (vii) of the perjury count Olivieri was asked:  "Did you ever do business with Murray?"  He gave the claimed perjured statement response of:  "I never did business with Murray himself". This response was correct, and clear in its limitations on "Murray himself".  It was the Government's obligation if they so chose, to follow up with a question regarding doing

---

[20] Additionally, wholly absent from the indictment is the why, how or as to what action the inquiry was material. As such, the count must be dismissed. Slawik, 548 F. 2d at 83.

business with any of his family members or his company. This is particularly so, when as here, the Government has information regarding the question and supposed answer, but chooses to not ask the more specific question, or follow-up question.  See Bronston, 409 U.S. 352.

As a further illustration of this point, in section (ix) the government inquires as to how Olivieri learned of the Bronx jobsite, the Government has a name in mind and provides that name otherwise in the indictment, as Finbar O'Neill. See Indictment, Count Three.  However, at the deposition they claim it is a perjured statement when Olivieri states he cannot recall "right now". Rather than ask him directly "was the person Finbar O'Neill", they move on and charge him with perjury for not remembering in the midst of a deposition.

Further, out of twenty-five alleged false statements, sixteen were either "not to my knowledge", or "I don't recall" or of that nature. As discussed by the Bronston court, memories and articulation may be difficult in the pressure and moment of a deposition, so that the burden is on the questioner to be precise. If a follow-up question will clarify, then the burden is on the questioner to do so. Id. at 358. The "examiner's lack of precision in phrasing the queries" can cause questions to be fundamentally ambiguous". United States v. Markiewcz, 978 F.2d 786 (2d Cir. 1992).   We submit that

each of the questions presented were fundamentally ambiguous, and to the extent that the count is not otherwise dismissed it should be on this basis. Alternatively, we request that the Court review the questions and dismiss that portion of the count in which it determines the questions are fundamentally ambiguous.

Literal Truth

Although, usually the truth of a statement is left for the jury's determination, here at a minimum as regards the sixteen occasions where it was indicated by Olivieri that he could not recall, or did not know, the indictment is on its face literally true and cannot be shown otherwise. Even if unresponsive or misleading, if literally true, then the perjury charge cannot be maintained. Bronston, 409 U.S. at 359, 362.  There is no manner by which the Government can establish that during the deposition, with all of its potential tension, that Olivieri recalled at that moment matters which he claimed he could not recall. As such each of these 16 answers should be dismissed from the indictment.

Further, in Lighte the court reversed the conviction for perjury where the questioner "failed to differentiate between Lighte's actions as a trustee and those which he undertook in an individual capacity." Lighte, 782 F. 2d at 375.   The same is true in the instant matter. Olivieri was present at the

26

deposition to testify subsequent to his affidavit on behalf of the association, not his individual capacity. Yet, at deposition the Government never distinguished between the two.

<u>Dismissal of Unspecified Statements</u>

Additionally, in the event the count is not dismissed, it should be limited to the precise allegations contained in the indictment.  The language of the perjury count lists as underlined deposition answers that the Government claims are false, with no further explanation.  It claims that "the defendant, gave false testimony, <u>including the following</u> underlined testimony…"  Thereafter certain questions and answers are recited. The Government, however, has indicted its intent not to be bound by the claimed false answers recited in the indictment. In the Government's motion to disqualify Olivieri's prior counsel they argued that evidence will be presented at trial regarding deposition statements by Olivieri, including but not limited to, his testimony as to which corporations he owns. Gov't Motion to Disqualify (Docket entry 63) p. 14-15.  This question and answer series is not among those recited in the indictment, nor is the topic otherwise described in the count.

In the Second Circuit there is no current requirement for what has been referred to as a "truth paragraph", as required in the Third and Ninth

27

Circuits. See United States v. Serola, 767 F. 2d 364, 369-70 (7thCir. 1985) (discussing the split between the circuits). That is, in this circuit the indictment is sufficient if it alleges the falsity of the defendant's statements without alleging what the truth was. United States v. Marchisio, 344 F.2d 653, 662 (2d Cir. 1965). However, the indictment is required to state the allegedly false statements. Here, the Government has indicated its intent to proceed on statements not recited in the indictment as false, and not otherwise described. As such, Olivieri is not adequately advised by the indictment of what false statements he is alleged to have uttered, other than those listed in the indictment. It would be contrary to the Sixth Amendment to the United States Constitution and Fed.R.Crim.P. 7(c)(1) to allow the Government to proceed on statements not recited in the indictment nor otherwise described therein. See Marchisio, 344 F.2d at 662.

## POINT II

### THE PORTION OF COUNT SEVENTEEN CHARGING CONDUCT PRIOR TO AUGUST 3, 2004 SHOULD BE DISMISSED AND A BILL OF PARTICULARS SHOULD BE GRANTED

Count Seventeen of the Indictment charges Olivieri with Unlawful Payments to Labor Representatives under 29 U.S.C. § 186(a)(1), (d)(2). The time period stated in the Count Seventeen includes acts, "[f]rom in or about 2002, up and including in or about 2005." Indictment ¶ 78. The substantive

criminal acts alleged to have taken place during that time period are that, "OLIVIERI paid tens of thousands of dollars for the meals and expenses of District Counsel officers and representatives, including but not limited to MICHAEL FORDE and JOHN GREANEY." Indictment ¶ 78. Any meals or expenses that the Government alleges to have occurred prior to five years before the filing of the Indictment must be dismissed as outside of the statute of limitations.

Pursuant to 18 U.S.C. § 3282(a), prosecution of non-capital offenses shall occur within five years after the offense was committed, "[e]xcept as otherwise expressly provided by law." In <u>Toussie v. United States</u>, 397 U.S. 112 (1970), the Supreme Court observed that the limitations period for criminal offenses is "designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." <u>Id.</u> at 114-15. As such, "criminal limitations statutes are 'to be liberally interpreted in favor of repose.'" <u>Id.</u> at 115 (quoting <u>United States v. Scharton</u>, 285 U.S. 518, 522 (1932)).

In this case, the Indictment was filed on August 3, 2009. Count Seventeen charges Oliveiri with paying District Counsel officers and representatives in the form of "meals and expenses" from 2002 to 2005 in

violation of 29 U.S.C. § 186(a)(1). Each meal or expense is a separate act of payment alleged to have occurred. The prosecution of each separate act occurring prior to August 3, 2004 is time barred as outside of the five year statue of limitations. 18 U.S.C. § 3282(a). Each act of providing something of value in violation of Section 186 is a separate and complete offense. United States v. Cohen, 384 F.2d 699 (2d Cir. 1967) ("While the statute condemns the agreement, it likewise makes each receipt or acceptance a separate crime"); see also United States v. Alaimo, 297 F.2d 604 (3d Cir. 1961) ("each unlawful payment to the defendant constituted a separate offense"); United States v. Donovan, 339 F.2d 404 (7th Cir. 1964) ("There were individual receipts of money from United over many months, and each time defendant received and accepted a check he was doing what the statute forbade"). As such, any "meals" or "expenses" that were allegedly paid prior to August 3, 2004 are outside of the scope of chargeable conduct and must be dismissed.

The only way for an indictment to properly include conduct that occurred outside of the five year statute of limitations is for there to be a finding of a "continuing offense." Toussie, 397 U.S. at 115 (quoted in United States v. Eppolito, 543 F.3d 25, 46-47 (2d Cir. 2008)). Criminal limitations periods run from the time that "the crime is complete." Toussie,

397 U.S. at 115 (quoting <u>Pendergast v. United States</u>, 317 U.S. 412, 418 (1943)). "The time at which a crime is 'complete' depends largely on the nature of the crime. Some crimes are 'instantaneous;' others are 'continuing.'" <u>United States v. Eppolito</u>, 543 F.3d 25, 46 (2d Cir. 2008) (citing <u>Toussie</u>, 397 U.S. at 115, 122). Thus, courts have long recognized a "continuing offense doctrine" in which a crime that "involves a prolonged course of conduct," thereby "extends the statute beyond its stated term." <u>Eppolito</u>, 543 F.3d at 46 (citing <u>Toussie</u>, 397 U.S. at 115). However, because of the "apparent 'tension between the purpose behind statutes of limitations and the continuing offense doctrine,'" <u>id.</u>, a continuing offense should not be found "unless the *explicit language of the substantive criminal statute* compels such a conclusion, or the nature of the crime involved is such that *Congress must assuredly have intended* it to be a continuing one." <u>Toussie</u>, 397 U.S. at 115 (quoted in <u>Eppolito</u>, 543 F.3d at 46-47) (emphasis added). Thus, application of the "continuing offense doctrine" depends on the nature of the substantive criminal law at issue; and should not be applied case-by-case on the varying actual conduct of each individual defendant.

The substantive criminal statute at issue here states:

> It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, advisor, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or

> agree to pay, lend or deliver, any money or other thing of
> value—
> (1) to any representative of any of his employees who are
> employed in an industry affecting commerce;  ...

29 U.S.C. § 186(a)(1).  The statute contains no explicit language supporting a finding on its face that the offense is continuing in nature or leads to the conclusion that Congress "assuredly" intended it to be such.

Here, the Government has aggregated into one count four years of conduct that allegedly involved paying for meals and expenses.  While aggregation of like conduct is appropriate in certain circumstances, it should not be used, as it is here, to circumvent the five year statue of limitations.  Indeed, the majority of the time period alleged in the complaint, 2 years and 7 months, falls outside of the five year statute of limitations. While only 1 year and 5 months of conduct is properly included because it occurred after August 3, 2004.

In United States v. McGuiness, 764 F.Supp. 888 (S.D.N.Y. 1991), the court recognized the general rule that Section 186 "prohibited" the "aggregation of separate payments." Id. at 892.  However, the court found that aggregation of payments occurring outside of the statute of limitations may be proper where "there was an alleged scheme or mechanism under which recurring bribes were made." Id.

Count Seventeen does not allege any "scheme or mechanism," but

only claims that Olivieri paid for "meals and expenses" of District Council officers and representatives over a period of four years.  There was no overarching scheme, and the Indictment is correctly silent on that issue. Without a scheme or mechanism governing the alleged payments, there is no basis to depart from the established rule that by its nature, a violation of Section 186 is not a "continuing offense."  Each act in violation of Section 186 is its own distinct offense.

Accordingly, this court should dismiss as untimely the portion of Count Seventeen that includes conduct occurring prior to August 3, 2004.

Bill of Particulars Requested

In addition, based on the broad manner in which the allegations of Count Seventeen are drafted, Olivieri requests that the Government be directed to provide a bill of particulars as to the meals and expenses allegedly paid.  The bill of particulars should state as to each alleged occurrence: (i) the specific nature (i.e. meal or expense), (ii) the date, (iii) the location, (iv) the dollar amount, and (v) the name of the union officer or representative on whose behalf it was paid.

A bill of particulars "is appropriate to permit a defendant 'to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to

33

interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1998). Where an Indictment charges a defendant with violating 29 U.S.C. §186, the Government should be required to provide a bill of particulars as to the circumstances of each alleged improper transaction. See, e.g., McGuinness, 764 F.Supp. at 893-94 (granting a bill of particulars as to "[t]he approximate amount and date of each payment ... as well as the name of the person making such payment ..."); United States v. Ricciardi, 40 F.R.D. 133, 134 (S.D.N.Y. 1965) (granting a bill of particulars as to "the date and place when and where each of the requests and demands for money from employers are claimed to have been made ... [and] the name of the employer or employer organization upon whom such requests and demands were made"); see also United States v. Roberts, 264 F. Supp. 622, 624 (granting a bill of particulars as to "[t]he exact date of the alleged offense" and the "[approximate] time of day"); United States v. Lonzo, 793 F. Supp. 57, 59 (N.D.N.Y. 1992) (where the Indictment states "'and elsewhere' ... the location of 'elsewhere' shall be provided to the [defendant] by the Government" in a bill of particulars); United States v. Smith, 65 F.R.D. 464, 469 (N.D. Ga. 1974) (granting a bill of particulars as to the location of the offense where "the locations ... are not specified other than that they lie

within this district").

As set forth above, Count Seventeen contains the broad statement that "OLIVIERI paid tens of thousands of dollars for the meals and expenses of District Council officers and representatives, including but not limited to MICHAEL FORDE and JOHN GREANEY" in violation of 29 U.S.C. § 186(a)(1). Indictment ¶ 78. The time period and location for this alleged conduct is stated as "[f]rom in or about 2002, up and including in or about 2005, in the Southern District of New York and elsewhere." Indictment ¶ 78. From these statements, Olivieri cannot sufficiently identify the acts that he is charged with.

The Indictment states that Forde and Greaney received something from Olivieri, but does not state whether it was a purchased meal or expense paid, or both. It is not clear whether Olivieri made these alleged payments to them together or on separate occasions. It is also not clear who, if any, the other individuals are who received such payments. Moreover, the time period and geographical areas alleged spans back to eight years ago and broadly covers this district, "and elsewhere." Sufficient notice of the charge is lacking where Olivieri is faced with defending against a count that essentially charges him with buying unidentified people dinner eight to five years ago, anywhere in the world. The Government must state, at the very

35

least, the dates, locations, dollar amounts, and people involved in the alleged payments. <u>McGuinness</u>, 764 F.Supp. at 893-94; <u>Ricciardi</u>, 40 F.R.D. at 134. The purchasing of meals and payment of expenses are finite acts, and the government can surely point to the specific days on which each of the alleged payments occurred and the locations. <u>See e.g.</u>, <u>id.</u>; <u>Roberts</u>, 264 F. Supp. at 624; <u>Lonzo</u>, 793 F. Supp. at 59; <u>Smith</u>, 65 F.R.D. at 469.

In addition, as a charged crime in 29 U.S.C. 186(a)(1) must necessarily involve payment to a "representative of any of his employees," the Government should be required to state who the individuals are who allegedly received these payments. Olivieri is entitled to information as to the identity of these individuals so that he may prepare a defense to this element of the charge.

Finally, the allegation of "tens of thousands of dollars" must be particularized by the Government. The substantive criminal statute characterizes the offense as a misdemeanor or a felony depending on the amount of money involved. 29 U.S.C. § 186(d)(2). As set forth above, each separate act of payment is a separate violation of the statute. The amount of money alleged to have been involved in each occurrence of a meal or expense paid is essential to Olivieri's ability to prepare a defense, avoid surprise and interpose a plea of double jeopardy.

36

Accordingly, the court should require the Government to provide a bill of particulars stating as to each alleged occurrence: (i) the specific nature (i.e. meal or expense), (ii) the date, (iii) the location, (iv) the dollar amount, and (v) the name of the union officer or representative on whose behalf it was paid.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant the instant motion dismissing Count Twenty-four of the Indictment and the portion of Count Seventeen of the Indictment that includes conduct occurring prior to August 3, 2004, granting a bill of particulars as to the matters requested, and ordering such other relief as the Court deems just and proper.

Dated:     New York, New York
           April 2, 2010


                                    SULLIVAN GARDNER PC


                              By: _____
                                    Brian Gardner (BG 0006)
                                    Attorneys for Defendant Joseph Olivieri
                                    475 Park Avenue So.
                                    New York, New York 10016
                                    (212) 687-5900

37